*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 17-FS-1414

IN RE H.R.; C.R.B., APPELLANT.

Appeal from the Superior Court of the District of Columbia
Family Division
(NEG-127-17)

(Hon. Tara J. Fentress, Magistrate Judge)
(Hon. Julie H. Becker, Reviewing Judge)

(Submitted January 8, 2019                    Decided April 25, 2019)

*Patricia M. Spicer* was on the brief for appellant C.R.B.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Stacy L. Anderson*, Acting Deputy Solicitor General, and *Pamela Soncini*, Assistant Attorney General, were on the brief for appellee District of Columbia.

*Abimbola Imoisili*, guardian ad litem for appellee H.R., filed a statement in lieu of brief in support of appellee District of Columbia.

Before GLICKMAN and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

MCLEESE, *Associate Judge*:   Appellant C.R.B. challenges the trial court's

determination that C.R.B.'s daughter H.R. was a neglected child.  We affirm.

**I.**

Except where noted, the following facts appear to be undisputed. One day in February 2017, C.R.B. became concerned when she saw her daughter H.R., who was seven years old at the time, talking to a stranger in a restaurant. C.R.B. told H.R. not to talk to strangers, but H.R. continued to speak with the stranger. C.R.B. then threatened to spank H.R. when they returned home.

When C.R.B. and H.R. returned home, C.R.B. told H.R. to remove her clothes in preparation for a spanking. H.R. did not comply. C.R.B. then proceeded to hit H.R. C.R.B. testified that she hit H.R. on the bottom with the palm of her right hand. The magistrate judge, however, perceived inconsistencies in C.R.B.'s account of the incident. For example, C.R.B. first testified that there was "no struggle" but then acknowledged that H.R. was "wriggling around." Additionally, C.R.B. initially testified that H.R. "fell to the floor" during the spanking but later stated that H.R. was "wriggling around while standing up" and "never went to the floor."

According to C.R.B., at some point during the spanking, a ring on C.R.B.'s hand struck H.R. in the face. C.R.B. could not recall whether the ring was on her

left or right hand.  As a result of the incident, H.R. suffered a "purplish-red, curved scratch and bruising along [H.R.'s] upper cheek bone, under her right eye."  No medical attention was required for the injury, which took approximately three days to heal.

The following day, school personnel contacted the Child and Family Services Agency (CFSA), concerned about possible physical abuse of H.R.  CFSA social worker Amy Vokes interviewed H.R. at school.  After the conversation, and in light of the proximity of the injury to H.R.'s eye, Ms. Vokes became concerned about physical abuse.  Ms. Vokes took a photo of H.R.'s injury.

Ms. Vokes also interviewed C.R.B.  C.R.B. told Ms. Vokes that C.R.B. "had the kinds of kids you have to beat," which the magistrate judge took to indicate that beatings were routine.  C.R.B. testified, however, that she uses spanking as a last resort and that she uses the words "beat" and "spank" interchangeably.  Ms. Vokes attempted to develop a safety plan with C.R.B., including using non-physical forms of discipline, but C.R.B. told Ms. Vokes that if she could not beat her children, Ms. Vokes would need to find someone else to care for them.

The magistrate judge found H.R. to be a neglected child under D.C. Code § 16-2301(9)(A)(i) (2018 Supp.) (defining neglect to include abuse by parent). The magistrate judge held that H.R.'s injury constituted "bodily harm greater than transient pain or minor temporary marks," and thus amounted to "physical injury" under D.C. Code § 16-2301(30). The magistrate judge also questioned C.R.B.'s credibility, concluding that C.R.B. had not adequately explained H.R.'s injury. The magistrate judge therefore drew an inference of neglect, pursuant to D.C. Code § 16-2316(c) (2012 Repl.) (where child suffers injury while in custody of parent, and parent cannot satisfactorily explain injury, court may draw inference of neglect). Finally, the magistrate judge found that C.R.B.'s beating of H.R. was "chaotic" and "neither reasonable in manner, nor moderate in degree."

An associate judge of the Superior Court affirmed the magistrate judge's ruling.

**II.**

C.R.B. argues that the magistrate judge erred in finding H.R to be a neglected child. "We will reverse a finding of neglect only if it is 'plainly wrong or without evidence to support it.'" *In re Am. V.*, 833 A.2d 493, 497 (D.C. 2003)

(quoting D.C. Code § 17-305(a) (2001)). We review the evidence "in the light most favorable to the [trial court's finding], giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." *Id.* (internal quotation marks omitted). We conclude that the record supports the magistrate judge's neglect finding.

**A.**

The magistrate judge reasonably found that H.R.'s injury constituted bodily harm greater than a minor temporary mark and thus fell within the statutory definition of "physical injury." The District of Columbia Council did not define "minor temporary mark," nor have our cases provided such a further definition. We find substantial assistance, however, from the legislative history of § 16-2301(30). *See generally, e.g.*, *Lewis v. Washington Hosp. Ctr.*, 77 A.3d 378, 382 (D.C. 2013) ("We also consult the legislative history of a statute for guidance as necessary.") (brackets and internal quotation marks omitted).

The definition of "physical injury" in § 16-2301(30) was added as part of the Improved Child Abuse Investigations Amendment Act of 2002, D.C. Law 14-206, 49 D.C. Reg. 7815, 7823 (Aug. 16, 2002). When that piece of legislation was first

introduced as a bill, "physical injury" was defined as including "lacerations, fractured bones, burns, internal injuries, severe bruising, or serious bodily harm." D.C. Council, Introduction to Bill 14-372 at 3 (Oct. 2, 2001).

That original definition was criticized by several witnesses who testified about the bill. D.C. Council, Report on Bill 14-372 at 5 (May 29, 2002). For example, the U.S. Attorney's Office for the District of Columbia submitted written testimony expressing its belief that the original definition was "too narrow." Hearing on Bill 14-372, Statement of U.S. Attorney's Office at 8 (Feb. 4, 2002). The U.S. Attorney's Office recommended amending the definition to "any bodily harm greater than transient pain or minor temporary marks." *Id.* Another witness took a similar position, stating that

> unlawful discipline should include any other act that is likely to cause bodily harm greater than transient pain or minor temporary marks, in order to focus on the outcome of the discipline that has been imposed rather than simply on the method by which it was inflicted. Causing lasting pain or marks on [a] child's body indicates extreme behavior on the part of an adult that is outside norms of appropriate care giving and represents a threat to the child's safety.

Hearing on Bill 14-372, Statement of Evita Smedley at 7 (Feb. 4, 2002).

In response, the Committee on the Judiciary revised the definition of "physical injury" to its current form. D.C. Council, Report on Bill 14-372 at 5

(May 29, 2002). The Committee Report explained that this new definition was intended to "ensure that the scope of allowable corporal punishment is limited to conduct that causes only 'transient pain or minor temporary marks,' so that corporal punishment leaving bruises or welts, as well as more serious injury, would be within the ambit of the abuse definition." *Id.*

In sum, the legislative history of § 16-2301(30) establishes that the District of Columbia Council intended "physical injury" to include injuries such as H.R.'s injury in this case: a "purplish-red, curved scratch and bruising along [H.R.'s] upper cheek bone, under her right eye," that did not heal for approximately three days. *See generally Lewis*, 77 A.3d at 382 ("Under the circumstances of this case, we view th[e] legislative history as providing definitive guidance in resolving the ambiguity . . . ."). C.R.B. argues that our cases require more substantial injury, but we do not agree. *See In re A.B.*, 999 A.2d 36, 47 (D.C. 2010) (evidence that children had been disciplined with belt and ruler, without further evidence of manner of discipline or physical results of discipline, did not establish threat of bodily harm greater than transient pain or minor temporary remarks, because "hitting a child with a belt (or a ruler) might well cause no more than 'transient pain or minor temporary marks,' depending on how it is done"); *In re L.H.*, 925 A.2d 579, 580-81 (D.C. 2007) (finding no "physical injury" within meaning of

neglect statute where parent slapped sixteen-year-old daughter in face and threw daughter to floor, where only evidence as to injury was that there was discoloration on daughter's forearm, with no evidence about nature or extent of discoloration).

**B.**

The magistrate judge also reasonably found that C.R.B. had not satisfactorily explained H.R.'s injury and that H.R.'s injury therefore justified an inference of neglect. D.C. Code § 16-2316(c) (where child suffers injury while in custody of parent, and parent cannot satisfactorily explain injury, court may draw inference of neglect). C.R.B.'s account of the incident was that H.R. was accidentally injured while C.R.B. was simply trying to spank H.R. The magistrate judge, however, did not credit that account, concluding that there were gaps and inconsistencies in C.R.B.'s account. For example, the magistrate judge was troubled by C.R.B.'s testimony both that there was "no struggle" and that H.R. was "wriggling around," as well as C.R.B.'s testimony both that H.R. "fell to the floor" and that H.R. "never went to the floor." These and other similar concerns led the magistrate judge to conclude that it was not clear how H.R. was injured. C.R.B. argues that the discrepancies the magistrate judge found in her account can be reconciled. Perhaps that is so, but we are required to defer to reasonable credibility determinations by

the finder of fact. *In re Am. V.*, 833 A.2d at 497. We see no basis in this case upon which to look behind the magistrate judge's credibility determinations, which were reasonable in light of the evidence.

**C.**

C.R.B. argues that her conduct was not a basis for a neglect finding, because she was engaged in reasonable parental discipline. *See* D.C. Code § 16-2301(23)(B)(i) (excluding from definition of "abused" "discipline administered by a parent . . . to his or her child; provided, that the discipline is reasonable in manner and moderate in degree and otherwise does not constitute cruelty"). The magistrate judge, however, found that C.R.B.'s discipline of H.R. was neither reasonable in manner nor moderate in degree. The magistrate judge characterized the beating as "chaotic" and "so uncontrolled" that C.R.B. "could not explain how [H.R.] was struck under her eye while [C.R.B.] was 'spanking her bottom with an open palm.'" The record evidence supports these conclusions.

We are not persuaded by C.R.B.'s arguments to the contrary. First, C.R.B. argues that an accidental injury cannot lead to a finding of abuse, because "child abuse" requires "*intentional* infliction of physical or emotional injury." D.C. Code

§ 4-1341.01(2) (2012 Repl.) (emphasis added). This definition, however, is limited to the subchapter of Title 4 dealing with the Child Abuse and Neglect Prevention Children's Trust Fund. *Id.* H.R. was found to be neglected under D.C. Code § 16-2301(9)(A)(i), and C.R.B. presents no support for a conclusion that that provision requires that the physical injury at issue have been intentionally inflicted. To the contrary, it is clear that at least in some circumstances a determination of abuse can rest on parental conduct that was not intended to injure. *See* D.C. Code § 16-2301(23)(A)(iii) ("abuse[]" includes "negligent treatment or maltreatment of a child").

Second, C.R.B. argues that there is no history of abuse in this case and that there was no evidence that H.R. was in imminent danger of further injury. The relevant provision, however, does not require proof either of a history of abuse or of imminent danger of future injury. D.C. Code § 16-2301(9)(A)(i), (23)(A)(i), (30).

Third, C.R.B. relies on evidence that she had already tried lesser forms of discipline and that she is a loving and caring mother. Although such evidence was certainly relevant, it did not compel the magistrate judge to rule in C.R.B.'s favor on the issue of neglect. To prevail on appeal, C.R.B. must show that there was no

evidence to support the magistrate judge's decision or that the decision was plainly wrong. *In re Am. V.*, 833 A.2d at 497. C.R.B. has not met that burden.

**III.**

Finally, C.R.B. argues that the magistrate judge impermissibly refused to allow H.R.'s therapist to testify. We conclude that any error was harmless. *See generally, e.g.*, *In re Ty. B.*, 878 A.2d 1255, 1266 (D.C. 2005) (in neglect case, holding that error is harmless if court can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error") (internal quotation marks omitted).

C.R.B. proffered that H.R.'s therapist would testify as to H.R.'s mental health and behavioral issues, which would bear on whether C.R.B.'s discipline of H.R. was reasonable under the circumstances. We assume that the proffered testimony would have been relevant. We can say with fair assurance, however, that the testimony would not have affected the magistrate judge's decision. The magistrate judge found neglect based on the conclusions that C.R.B. had not credibly explained how she injured H.R. and that C.R.B.'s effort to impose

discipline was unreasonable in its manner. The proffered testimony went most directly to whether it was reasonable of C.R.B. to use physical discipline as opposed to other forms of discipline. We are confident that the proffered testimony would not have affected the magistrate judge's conclusions that H.R.'s injury was inadequately explained and that C.R.B.'s discipline was unreasonable in manner.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*